IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINIFERA IMPORTS LTD., <br>              *Plaintiff,* <br><br> - against - <br><br> SOCIETÀ AGRICOLA CASTELLO ROMITORIO SRL, <br><br>              *Defendant.* | **COMPLAINT** <br><br> Civil Action No. 2:16-CV-00103 |

**CABRERA CAMMAROTA PLLC**

Paolo J. Cammarota
Jennifer M. Cabrera
1133 Broadway Suite 708
New York, NY 10010
Tel: (646) 470-0805
paolo@panlegal.net

Attorneys for Plaintiff

*January 8, 2016*

Plaintiff Vinifera Imports Ltd. (hereinafter "Plaintiff" or "Vinifera"), by its undersigned counsel, for its Complaint against Defendant Società Agricola Castello Romitorio SRL (hereinafter "Defendant" or "Romitorio"), alleges, upon information and belief, as follows:

## I. PRELIMINARY STATEMENT

1. Vinifera is a distributor of fine Italian wines in the United States. It entered into a contract with Romitorio, an Italian winery, under which Vinifera would promote Romitorio and sell its wine in exchange for exclusive distribution rights until 2022. However, seven years into their relationship, after Vinifera had spent time and energy promoting Romitorio's wines and transforming it into a premier brand, Romitorio cynically claimed to terminate their contract and work with other distributors.

2. Vinifera therefore brings claims against Romitorio for breach of contract and breach of the covenant of good faith and fair dealing. Vinifera has expended considerable effort marketing Romitorio's wine and has a backlog of that wine worth two million dollars.

## II. THE PARTIES

3. Plaintiff is a corporation organized and existing under the laws of New York, with principal offices located at 205 13th Ave, Ronkonkoma, New York 11779-6801. Plaintiff is in the business of importing and distributing premium Italian wines throughout the United States.

4. Defendant is a corporation organized and existing under the laws of Italy, and headquartered at Località Castello Romitorio 279, Montalcino (SI), 53024. Defendant is engaged in the business of producing and bottling wine.

1

### III.     JURISIDICTION AND VENUE

5.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the requisite amount of seventy-five thousand dollars ($75,000) and the dispute is between a citizen of New York and a foreign citizen.

6.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

### IV.     TRIAL BY JURY

7.      Vinifera respectfully requests a trial by jury.

### V.      STATEMENT OF FACTS

8.      Vinifera is a Long Island-based distributor that imports wines from Italian producers and sells them to retailers throughout the United States.  In this industry, distributors accept wine, sometimes in large volume, in the faith that they can find a profitable market.  Typically, distributors pay producers only after selling on the wine, while in the meantime building up an inventory.  Since this cycle takes time, exclusive relationships are common, so distributors can avoid the risk of promoting (and accumulating an inventory) of a wine, only to see it offered by a competitor who is spared the labor of promotion.  Vinifera has conducted this business for over thirty years.

9.      Before it started working with Vinifera in 2008, Romitorio's wines were not well known in the United States.  Romitorio had relationships with several small distributors, but it was dissatisfied with its sale volume.  In 2008, Mr. Dominic Nocerino, the founder of Vinifera,

first became acquainted with the father and son owners of Romitorio, Alessandro and Filippo Chia, and proposed acting as Romitorio's exclusive distributor in the United States. Since Vinifera was and remains one of the U.S.'s preeminent distributors of Italian wines, Romitorio readily agreed. After their initial meeting in Italy in 2008, Mr. Nocerino and Mr. Filippo Chia always met at Vinifera's office in Ronkonkoma.

10. Romitorio's distribution contract with Vinifera was first memorialized in writing in a July 20, 2010 letter agreement, recording that "Vinifera Imports Ltd. in Ronkonkoma, NY is the exclusive importer of wines made by Soc. Agr. Castello Romitorio srl for the U.S. market with exception of the Ohio and Missouri state."

11. Vinifera placed orders directly with Defendant at the end of each year, and Defendant delivered wines to New York the following January. Vinifera then promoted and sold the wine, building up a market for Romitorio's product. As is typical for distributors of fine wines, Vinifera would sell about 50% of Romitorio's wines within a year of delivery. More expensive wines could take two to three years to sell to retailers. Given how long it can take to sell wines, most distribution contracts contemplate payment by the distributor within eight months to a year of delivery by the producer. Initially, the parties agreed that Vinifera would pay Romitorio for each order within one year of delivery, regardless of how much wine had actually been sold. Later, in November 2012, Romitorio requested that Vinifera make payment within six months of shipment.

12. The price and quantity of Vinifera's orders were set annually following negotiation between the parties. For instance, in December 2014, when Mr. Filippo Chia asked to receive €22 per bottle of Defendant's 2010 Brunello di Montalcino Filo di Seta, Mr. Nocerino counter-proposed a price of €15 per bottle, noting that this wine was a new product. Mr. Filippo

3

Chia, the director of Romitorio, agreed to this price, stating that he understood that the new product needed to be launched.

13. Since the beginning of their relationship, Vinifera has invested significant time and money to introduce Defendant's products to the U.S. market and to build Defendant's reputation in the United States. Vinifera sent samples to potential customers and wine distributors in different cities. Vinifera also submitted Romitorio's wine to several competitive tasting events to have Defendant's products ranked by acclaimed wine critics. For instance, wines were sent to Wine Spectator – one of the best sources of wine information on the Internet – which rated Romitorio's Il Toro wine in 2008 and 2011.

14. Vinifera also kept Defendant's registration with the U.S. Food and Drug Administration up to date.

15. In late 2012, Mr. Nocerino learned that Mr. Chia had sold a large order of Morellino di Scansano to another distributor in New York. Mr. Nocerino wrote to Mr. Filippo Chia to demand a ten-year term in a written contract, explaining that while Vinifera was committed to investing in the Romitorio brand, it could not afford to promote Romitorio if its wines were to be sold by other distributors.

16. After discussing by phone and in person, Romitorio agreed to a ten-year term. On November 21, 2012, Ms. Tullia Zima Battaglia of Romitorio wrote to Mr. Nocerino's assistant "Please find attached a copy of the contract." The enclosed agreement, also dated November 21, 2012, and written on Castello Romitorio's stationery (the "Contract") reads:

> *To whom it may concern*
>
> *This is to declare that Vinifera Imports LTD, Ronkonkoma NY, is our exclusive importer and distributor for all the United States, with exception of the Ohio and Missouri state.*
>
> *This agreement is valid from November 21st 2012 to November 21st 2022.*

4

*Faithfully yours,*

*Alessandro Chia*

17. Both sides stood to benefit from the Contract. Vinifera would profit from the sale of Romitorio's wines. And, as an exclusive distributor, Vinifera could devote itself to building up the market for Romitorio's wines, secure in the knowledge that it would benefit from that growth. Romitorio would benefit by having its wines sold by a reputable and successful U.S. distributor, building up its share of the desirable American market.

18. Over the next three years, Romitorio never suggested that it questioned the validity of their exclusive contract. On the contrary, Romitorio referred interested retailers to Vinifera. For example, in March 2015, Romitorio directed a Tampa wine retailer that was interested in distributing Romitorio's wines in Florida to Vinifera, referring to Vinifera as "our importer in New York."

19. Vinifera continued to market Romitorio's wines with great success, earning high praise from reviewers. For example, Vinifera provided samples to James Suckling, an internationally acclaimed wine critic and journalist, for tasting events in New York and San Francisco in 2014, following which Mr. Suckling gave high ratings to the 2007 Romito del Romitorio and the Brunello di Montalcino. In January 2015, Vinifera submitted Romitorio's wines to a tasting event hosted by the Miami Herald.

20. Relying on their continuing relationship, Vinifera continued to purchase large quantities of Romitorio's wines, amassing an inventory of roughly 65,000 bottles in 2015, for which it paid an aggregate total of approximately 2,500,000 dollars. Vinifera made these purchases because it expected that it would remain Romitorio's exclusive sales team in nearly all of the United States.

21.     Buoyed by its success in the United States – achieved in no small part based on Vinifera's successful marketing efforts – Mr. Filippo Chia wrote to Mr. Nocerino on May 8, 2015, seeking to drastically change the terms of their agreement.  In particular, he wrote that (i) the prices of all Defendant's wines would increase, with the price of Filo di Seta increasing by 50%; (ii) all prices and amounts would be fixed in advance for the years 2016, 2017 and 2018; and (iii) payment for orders must be received within 90 as opposed to 180 days of delivery.  Mr. Chia wrote that he understood that the new terms seemed harsh but claimed that he had no alternative.

22.     On May 12, Mr. Nocerino replied to Mr. Filippo Chia protesting the dramatic price increases and new payment deadlines.  In particular, Mr. Nocerino pointed out that none of Vinifera's other distribution agreements contemplated as onerous a payment deadline as 90 days.  Mr. Chia's proposed changes would make it impossible for Vinifera to sell Romitorio's wine economically.

23.     Romitorio did not respond to this email.  Nor did it contact Vinifera with complaints about its performance.  The parties did not speak again until September 20, 2015, when Mr. Nocerino wrote to ask Mr. Filippo Chia when he would be in New York so they could discuss their business.  Again, Mr. Nocerino noted that Vinifera had invested seven years promoting Defendant's wine and protested that Defendant couldn't unilaterally add conditions to their agreement.

24.     Mr. Nocerino met with Mr. Filippo Chia in Ronkonkoma in October 2015.  Mr. Chia said that Romitorio had found another distributor that would agree to a five-year term.  Mr. Nocerino told Mr. Chia that he did not consent to Romitorio's breach of their contract.

25. Romitorio's position was confirmed in an October 14, 2015 letter from Mr. Alessandro Chia purporting to terminate the Contract. This letter stated that Romitorio had decided to terminate Vinifera as its importer of wines in the United States, effective October 14, 2015. Mr. Chia wrote that Vinifera was "directed and instructed to cease any representation, sale, distribution, advertising or importing" of Defendant's wines effective October 14, 2015, with the exception of wines Vinifera already had in its inventory. The letter also stated that Vinifera was prohibited from using any intellectual property relating to Defendant or Mr. Alessandro Chia, and that Vinifera must inform all persons and companies that Vinifera "is no longer associated with or the importer for Castello Romitorio."

26. Vinifera did not agree to this termination of the Contract. Nevertheless, Defendant stopped selling wine to Vinifera and replaced Vinifera as its importer with Mionetto USA, a wine importing company located in White Plains, New York. Defendant's actions violated Vinifera's exclusive distributorship rights granted under the Contract.

27. Defendant's breach resulted in financial harm to Vinifera. Vinifera currently has a backlog of unsold Romitorio wines for which it paid over two million dollars. Vinifera cannot sell these wines except by continuing to promote the Romitorio brand to retailers – a significant marketing investment that does not make economic sense if the relationship with Romitorio has ended – and even then it could take eight years to fully sell its inventory.[1] Vinifera agreed to distribute Romitorio's wines under specific pricing with the understanding that it would benefit from future sales as it built the brand. Without that future benefit, promotion costs render the sale of the backlog uneconomical. Vinifera would have to promote wine it will not be able to provide once the backlog is cleared: advertising a product that it will not have in the future. This

---

[1] If Vinifera were to attempt to sell its inventory in a fire sale without any promotion of the Romitorio brand, the most it could expect to receive is $350,000.

7

effort would detract from Vinifera's promotion of its other brands, which it expects to continue selling, and the development of more productive relationships with new producers. And the promotion of Romitorio would benefit Romitorio and subsequent distributors – not Vinifera. Vinifera cannot be expected to continue to sell Romitorio's wines to its financial detriment after Romitorio has abandoned the relationship.

28. Furthermore, Vinifera has spent seven years marketing Romitorio's products, only to lose the profit it expected from its status as the exclusive distributor.

## VI.    CLAIMS OF RELIEF

### FIRST CAUSE OF ACTION
### Breach of Contract

29.    Plaintiff hereby realleges and incorporates every allegation contained in Paragraphs 8-28 of this Complaint with the same force and effect as though they were separately alleged herein.

30.    Pursuant to the parties' Contract, Vinifera was to be Defendant's exclusive importer and distributor of Defendant's products in all U.S. states, except for Missouri and Ohio, for a period ending no earlier than November 2022.

31.    Defendant's October 14, 2015 termination letter to Vinifera, which ordered Vinifera to cease any representation, sale, distribution and advertising of Romitorio products, is invalid because Vinifera never agreed to end the parties' Contract.

32.    Defendant's current relationship with Mionetto USA is in breach of the parties' contract, as Vinifera remains as the exclusive importer of Romitorio products throughout the United States with the exception of Ohio and Missouri.

33.    As a direct and proximate result of Defendants' breach, Plaintiff suffered damages that include the loss of its investment in its inventory of unsold Romitorio wines and its lost profits under the Contract.  These damages are valued in excess of $2,500,000, with the exact amount to be determined at trial.

### SECOND CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing

34.    Plaintiff hereby realleges and incorporates every allegation contained in Paragraphs 8-33 of this Complaint with the same force and effect as though they were separately alleged herein.

9

35.     Defendant unilaterally abandoned its agreement with Plaintiff. Under that agreement, in exchange for marketing Romitorio's wine, Plaintiff was to receive the benefit of being the exclusive source for that wine. This agreement neatly aligned the incentives of both sides: Vinifera would make more money in proportion to the success it had in establishing Romitorio in the market. Without the promise of exclusivity, Vinifera risked promoting Romitorio's wine, only to see another distributor reap the rewards of Romitorio's increased market share.

36.     Romitorio seeks to deprive Vinifera of the fruits of its labors – in marketing Romitorio's wine – by walking away from its promise of exclusivity. This is a breach of the covenant of good faith and fair dealing.

## VII.     REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(i)    Money damages representing Vinifera's loss of investment and lost profits, to be determined at trial, but in no event less than $2,500,000;

(ii)   Further money damages representing Vinifera's consequential damages resulting from Defendant's breach of the Contract;

(iii)  A declaratory judgment that Vinifera holds an exclusive right to sell Romitorio's wine as stated in the Contract;

(iv)   Pre-judgment and post-judgment interest; and

(v)    Such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            January 8, 2016

                                                                     Respectfully submitted by

                                                                     Paolo J. Cammarota (PC1811)
                                                                     **CABRERA CAMMAROTA PLLC**
                                                                     1133 Broadway Suite 708
                                                                     New York, NY 10010
                                                                     1-646-470-0806
                                                                     paolo@panlegal.net

                                                                     *Attorneys for Plaintiff*
                                                                     *Vinifera Imports LTD*