**FILED**
**CLERK**

8:35 am, Mar 12, 2020

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
VINIFERA IMPORTS LTD.,

      Plaintiff,

   -against-

SOCIETA AGRICOLA CASTELLO
ROMITORIO SRL,
      Defendant.
--------------------------------------------------------X
SOCIETA AGRICOLA CASTELLO
ROMITORIO SRL,

      Counter-Claimant,

    -against-

VINIFERA IMPORTS LTD.,

      Counter-Defendant.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:16-cv-00103 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**The Stolper Group, LLP**
*Attorneys for the Plaintiff and Counter-Defendant*
241 Centre Street 6th Floor
New York, NY 10013
   By: Michael T. Stolper, Esq., Of Counsel.

**Rosenberg & Pittinsky, LLP**
*Attorneys for the Defendant and Counterclaimant*
232 Madison Avenue Suite 906
New York, NY 10016
   By: Lawrence D. Pittinsky, Esq., Of Counsel.

**SPATT, District Judge**:

   Plaintiff Vinifera Imports Ltd. (the "Plaintiff") brings this action against defendant

Società Agricola Castello Romitorio SRL (the "Defendant") asserting causes of action for

(1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) *quantum*

1

*meruit*; (4) unjust enrichment; and (5) promissory estoppel stemming from the Defendant's termination of an alleged ten-year exclusive distribution agreement.

The Defendant asserts two counterclaims for (1) tortious interference with business relationship and (2) tortious interference with contract based on the Plaintiff's threatening of legal action against a third-party with whom the Defendant sought to start a new distribution arrangement.

Presently before the Court is the Defendant's motion for summary judgment against the Plaintiff's claims and in favor of its counterclaims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 56. For the following reasons, the Court grants the Defendant's motion with respect to the Plaintiff's claim for breach of the covenant of good faith and fair dealing and the Plaintiff's demand for lost profits under the theory of promissory estoppel. The Court denies the Defendant's motion in all other respects.

## I. BACKGROUND

The Plaintiff is a Long Island-based importer and distributor of Italian wines in the United States. The Defendant produces, bottles and sells Italian wine under the brand and label of Castello Romitorio from its winery located in Montalcino, Italy. The Plaintiff imported the Defendant's wine from 2007 to 2015. This case arises from the collapse of their distribution arrangement.

The parties assert two drastically different visions of their relationship. In the Plaintiff's view, both parties cooperated under the mutual goal to sell as much wine as possible for the highest profit. ECF 89-1 ¶ 10. According to the Plaintiff, the Defendant made the Plaintiff its exclusive distributor in 2007 to replace various smaller distributors, out of dissatisfaction with the sales volume driven by those distributors. *Id.* ¶ 2. Based on this exclusive relationship, the

Plaintiff invested significant time and money to develop a market for the Defendant's product. *Id.* ¶ 9. On the other hand, the Defendant believes that the Plaintiff purchased and imported the wine into the United States for the purpose of independently reselling and distributing the wine for its own profit. According to the Defendant, the parties were under no continuing obligation to transact with each other and shared no mutual goals. ECF 85-1 ¶ 7. In that sense, the Defendant argues that the Plaintiff was not a "middle person" who acted on the Defendant's behalf, but rather imported and sold the wine at its own benefit, at the price of its choosing and maintained its own inventory. ECF 85-16 at 56:12–15, 103:16–21, 138:4–14, 204:10–208:4, 260:4–261:2.

The parties had no written agreement articulating the specifics of their distribution arrangement, such as the sale and purchase of the wine; the importing of the wine; the resale and distribution of the wine; the marketing and promotion of the wine; the parties' course of conduct; or their rights upon default or termination. Instead, the Plaintiff handled orders on an annual basis, agreeing to pricing, quantity and payment terms after each vintage was bottled and tested. ECF 89-1 ¶ 6; ECF 85-1 ¶ 8; ECF 85-16 at 174:4–7.

In the beginning of their relationship, the Plaintiff requested a letter from the Defendant that would be given to the "government." ECF 85-16 at 99:2–23. Two employees of the Plaintiff wrote to the Defendant requesting a "Letter of Appointment" for the "Federal approval board" and a "Letter of Authorization."

On or about October 8, 2007, the Defendant provided the requested letter which contained *verbatim* the language that had been provided by the Plaintiff. ("October 2007 Letter"). ECF 85-1 ¶¶ 28–31; ECF 85-7; ECF 85-8; ECF 85-9. The October 2007 Letter stated:

> To Whom It May Concern:
>
> Vinifera Imports Ltd. in Ronkonkoma, NY is the exclusive importer of wines made by our winery.

ECF 85-9.

In 2010, after the parties agreed to carve out Ohio and Missouri from the Plaintiff's exclusive territory, the Defendant provided the Plaintiff an updated letter ("July 2010 Letter"). ECF 85-1 ¶¶ 32–33. The July 2010 Letter stated:

> To Whom It May Concern:
>
> Vinifera Imports Ltd. In Ronkonkoma, NY is the exclusive importer of wines made by Soc. Agr. Castello Romitorio srl for the U.S. market with (sic) exception of the Ohio and Missouri state[s].

ECF 85-11.

On October 22, 2012, the Plaintiff sent an e-mail that attached a sample contract it had with another Italian winery, Brigaldara, for an exclusive period. ECF 89-1 ¶ 12; ECF 89-5 at 1. The Plaintiff told the Defendant that the Plaintiff needed the Defendant to sign and send the Plaintiff the same single page document if it wanted the Plaintiff to continue as its importer in the United States. ECF 89-1 ¶ 12; ECF 89-5 at 1. The Defendant agreed. ECF 89-1 ¶ 12; ECF 89-5 at 1.

On November 21, 2012, the Defendant returned the document on its letterhead (the "November 2012 Letter") with a cover e-mail stating: "Please find attached a copy of the contract." ECF 89-5 at 2. The November 2012 Letter stated:

> To whom it may concern:
>
> This is to declare that Vinifera Imports LTD, Ronkonkoma NY, is our exclusive importer and distributor for all the United States, with exception of the Ohio and Missouri state.
>
> This agreement is valid from November 21st 2012 to November 21st 2022. Faithfully yours,
>
> Alessandro Chia.

ECF 85-4.

The parties dispute the origin and meaning of the October 22, 2012 e-mail and the November 2012 Letter. In the Plaintiff's view, the Defendant sent the document to memorialize their agreement that the Plaintiff was entitled to a ten-year exclusivity period. ECF 89-1 ¶ 11. According to the Plaintiff, the parties came to the agreement in a meeting between Domenic Nocerino Sr. ("Nocerino"), the founder and owner of the Plaintiff, and Filippo Chia, a co-owner of the Defendant, scheduled after the Plaintiff discovered that the Defendant sold a large order of wine to another distributor. *Id.* ¶ 11. During the meeting, Nocerino threatened to terminate the relationship unless the Defendant provided a written assurance of a ten-year exclusivity period. *Id.* ¶ 11. The Defendant does not contest that this meeting occurred, but disagrees about the substance of Nocerino and Chia's conversation. The Defendant characterizes the documents as merely confirmation that, if the parties' relationship ended, the Plaintiff could continue to sell its inventory of the Defendant's wine. The Defendant contends that the Plaintiff never voiced its opinion that the parties had an exclusive agreement until after the parties' relationship ended. ECF 85-1 ¶¶ 13–15.

After the November 2012 Letter, business as usual continued until May 2015, when a dispute over payment terms arose. ECF 89-1 ¶ 20. The Defendant wrote to the Plaintiff demanding payment every 90-days, rather than the six month payment period previously used, as well as price increases by as much as 50%. *Id.* ¶ 20. The Plaintiff responded that the proposed changes would make it impossible for the Plaintiff to sell the Defendant's wine economically. The parties did not speak again until September 20, 2015, when Nocerino wrote to ask Chia when he would be in New York so the parties could discuss their business. *Id.* ¶ 21.

In October 2015, Nocerino met with Chia at the Plaintiff's headquarters in Ronkonkoma, New York. *Id.* ¶ 22, during which Chia informed Nocerino that the Defendant had found another distributor. *Id.* ¶ 22. The Defendant argues that it terminated the arrangement due to the tense relationship between Nocerino and Chia; how the Plaintiff conducted business; lack of performance; weak or lack of marketing and distribution of the Defendant's wines; inconsistent and late orders for wine; and late and unpredictable payments of invoices. ECF 85-16 ¶ 16. On the other hand, the Plaintiff argues that the Defendant never contacted it with complaints about performance. ECF 89-1 ¶ 21.

On October 14, 2015, the Plaintiff received a letter from the Defendant seeking to terminate the parties' relationship. This letter stated that Defendant had decided to terminate the Plaintiff as its importer of wines in the United States, effective October 14, 2015. *Id.* ¶ 23. The Plaintiff was "directed and instructed to cease any representation, sale, distribution, advertising or importing" of the Defendant's wines effective October 14, 2015, with the exception of wines the Plaintiff already had in its inventory. *Id.* ¶ 23.

After the Defendant sent the termination letter, it replaced the Plaintiff as its importer with Mionetto USA ("Mionetto"), a wine importing company located in White Plains, New York. *Id.* ¶ 24. In November and December 2015, Nocerino and the Plaintiff's then-counsel contacted Mionetto, claiming that the Plaintiff had an exclusive import and distribution contract with the Defendant and threatening legal action against Mionetto. ECF 85-17. As a result of the letter, Mionetto placed its contract with the Defendant on hold and then terminated its relationship with the Defendant by refusing to proceed with the contract in its entirety. ECF 85-1 ¶ 58; ECF 85-19.

## II. DISCUSSION

**A. THE LEGAL STANDARD.**

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**B. AS TO THE PLAINTIFF'S BREACH OF CONTRACT CLAIM.**

The elements for a breach of contract claim under New York Law are (1) a contract, (2) the Plaintiff's performance under the contract, (3) the defendant's breach and (4) damages resulting from the breach. *Harsco Corp v. Segui*, 91 F.3d 337 (2d Cir. 1996); *TNT. USA Inc., v. DHL Express (USA), Inc.*, 09-cv-0481, 2012 WL 601452, at *5 (E.D.N.Y. Feb. 23, 2012). The Defendant moves for summary judgment on the ground that the Plaintiff cannot demonstrate the existence of a valid contract. The Court finds that a genuine dispute of material fact exists.

To prove the existence of a valid contract, a plaintiff must "establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound. That meeting of the minds must include agreement on all essential terms." *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 61 A.D.3d 118, 121 (App. Div. 2009). The Defendant argues that, because the ten-year exclusivity agreement cannot be performed within one-year, those components of a valid contract must be evidenced in writing pursuant to the New York Statute of Frauds. New York State General Obligations Law § 5-701(a) provides that:

> Every agreement … is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith … if such agreement … [b]y its terms is not to be performed within one year from the making thereof.

*Id.* 5-701(a)(1). Thus, the Defendant believes that the parties' agreement is void and unenforceable because the November 2012 Letter fails to articulate many of the essential elements of the contract.

The Defendant's approach is erroneous. "The Statute of Frauds was intended to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury and to ensure the existence of a valid agreement, not the inclusion of every item that the parties could have conceivably included." *Shaftel v. Dadras*, 39 F. Supp. 2d 217, 228

(E.D.N.Y. 1999). To that end, "the statute is satisfied by some note or memorandum signed by the party to be charged that is adequate to establish an agreement when considered in light of the admitted facts and surrounding circumstances." *Henry L. Fox Co. v. William Kaufman Org., Ltd.*, 542 N.E.2d 1082, 1084, 74 N.Y.2d 136, 140 (1989). However, "[t]he writings are not the agreement, of course, only evidence of the agreement. They are required so that there is no serious possibility that the assertion of the contract is false." *Id.*; *Wallabout Cmty. Ass'n. v. City of New York*, 798 N.Y.S.2d 714, at *4 (Sup. Ct. 2004).

Thus, the Court must first address whether the Plaintiff has adduced evidence of an offer, acceptance of the offer, consideration, mutual assent and an intent to be bound. *See Carruthers v. Flaum*, 450 F. Supp. 2d 288, 308–09 (S.D.N.Y. 2006) ("What the Petri defendants are really arguing [is] that they did not enter into a final and binding contract memorializing the terms of the sale of the 107 Parcel. If the parties have not reached a final agreement on the fundamental terms of the deal, no contract has been formed, so compliance with the Statute of Frauds is immaterial."). Only after the Court is satisfied that a binding contract exists does it address the contract's compliance with the Statute of Frauds. As the Court will explain, the Defendant failed to establish the absence of a genuine dispute of material fact in both regards.

**1. As to the Existence of a Binding Contract.**

The Defendant argues that no binding contract exists on the grounds that parties' distribution agreement: (1) was missing essential terms; (2) lacked mutually enforceable obligations; (3) lacked consideration and (4) was terminable at will by the Defendant.

The Defendant failed to comply with Local Rule 56.1, as its Rule 56.1 statement cites almost exclusively to pleadings and largely fails to cite admissible evidence supporting its factual assertions. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (explaining that

under Local Rule 56.1 "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible" and "where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion."). On a motion for summary judgment, the Court may only consider facts alleged in a pleading if they are undisputed. *See Melvin v. Cty. of Westchester*, No. 14-cv-2995, 2019 WL 1227903, at *1 n.1 (S.D.N.Y. Mar. 15, 2019) (explaining that for facts in Rule 56.1 statement based on allegations in the complaint "the Court will only consider that fact to the extent it is undisputed by Defendants.").

Accordingly, the Court finds that the Defendant failed to carry its burden of establishing the absence of a genuine dispute as to whether the parties agreed to a binding contract, because the Plaintiff put forward evidence contradicting the allegations in the pleadings relied on by the Defendant.

### a. As to Whether the Parties Agreed to Essential Terms.

The Defendant's argument improperly relies on the assumption that the parties had to memorialize the contract's terms in writing. "New York law does not require terms of a contract to be precisely and perfectly stated to be enforceable if the parties' intentions can be determined within a reasonable degree of certainty." *Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 807 F. Supp. 337, 347 (S.D.N.Y. 1992). "In determining the intention of the contracting parties, it is proper to consider matters outside the writings, including the previous dealings between the parties and the practices of the trade." *Id.* The Plaintiff can establish the existence of a contract through evidence of an oral agreement, *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985), as well as through the conduct of the parties. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg.*, Inc., 487 F.3d 89, 97 (2d Cir. 2007).

Here, the Plaintiff cites multiple pieces of evidence indicating that the parties' agreed to the overall framework for an exclusive distributorship, under which the parties determined the specifics of price, quantity, payment terms and delivery on a year-by-year basis. Specifically, Nocerino in his affidavit and deposition testimony describes an oral agreement between the parties, which is corroborated by the parties' continued performance over several years, as well as several letters describing an exclusive distributorship arrangement.

This evidence suffices to create a genuine dispute of material fact as to the existence of a binding contract. *See Paper Corp. of U.S.*, 807 F. Supp. at 346 (holding that parties could agree to a general agreement that "required Paper Corporation to sell Schoeller's paper to Hallmark" and that "Hallmark's discretion regarding the volume of its purchases and the fact that Paper Corporation might not have been able to sell the paper if Schoeller's price were too high do not render the agreement void or voidable"); *B. Lewis Prods., Inc. v. Maya Angelou, Hallmark Cards, Inc.*, No. 01-cv-0530, 2005 WL 1138474, at *8 (S.D.N.Y. May 12, 2005) (finding exclusive licensing agreement to publish literary work in greeting cards, calendars and stationary was sufficiently definite because parties had meeting of minds on broader framework of agreement with understanding that "[t]he details of the arrangement would become final as individual projects were undertaken").

### b. As to the Alleged Lack of Mutuality.

The Defendant argues that the parties' agreement is invalid because it only binds the Defendant to providing the Plaintiff exclusivity, and contains no reciprocal obligation requiring the Plaintiff to purchase and distribute the Defendant's wine. The Defendant's argument is factually disputed and of a questionable legal basis.

Factually, the Plaintiff contends that the parties acted under the mutual goal to sell as much wine as possible. ECF 89-1 ¶ 10. Indeed, the Defendant's own motion repeatedly articulates that the parties' arrangement required the Plaintiff to actively distribute the Defendant's wine. ECF 85-20 at 27 ("It is not factually disputed that Plaintiff was required to distribute, market and promote the Castello Romitorio Wine from the moment the relationship started . . . . Plaintiff had an obligation to distribute, promote and market the Castello Romitorio Wine."). The Defendant also relies on the Plaintiff's supposed failure to discharge its obligations under the agreement adequately as its proffered justification for terminating the relationship. *Id.* at 12 ("The reasons included disagreements and the tense relationship with Mr. Nocerino, how Mr. Nocerino conducted business, lack of performance, weak or lack of marketing and distribution of Castello Romitorio's wines, inconsistent and late orders for wine and late and unpredictable payments of invoices."). Consequently, the Court disagrees with the Defendant's assertion that it is undisputed that "Castello Romitorio was under no obligation to sell and Plaintiff was under no obligation to buy any wine from each other." *Id.* at 2.

Legally, courts often find distribution agreements to require the parties to use their best efforts to distribute the product subject to the agreement "even if the agreement did not expressly say so." *Baker's Aid, a division of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 730 F. Supp. 1209, 1219 (E.D.N.Y. 1990) (rejecting argument that manufacturing agreement was unenforceable due to lack of mutuality and consideration because it did not expressly require purchaser to purchase ovens); *see also Paper Corp. of U.S.*, 807 F. Supp. at 347 ("The failure of an agreement explicitly to require one party to promise to purchase from the party who has promised to sell does not render the agreement unenforceable.").

Given the writings between the parties, their continued performance over several years, and the parties' unanimous description of the relationship, the Defendant has not established that the absence of explicit language in the November 2012 Letter imposing a mutual obligation dooms the parties' agreement as a matter of law. *See B. Lewis Productions, Inc.*, 2005 WL 1138474, at *10–11 (rejecting argument that exclusive licensing agreement was unenforceable because it did not specify the quantity of work to be supplied or the efforts of licensor in light of evidence that the parties agreed on essential terms of the contract and the parties' repeated use of the term "exclusivity" in their dealings); *Scientific Management Institute, Inc. v. Mirrer*, 278 N.Y.S.2d 58, 60, 27 A.D.2d 845, 846 (App. Div. 1967) (rejecting lack of mutuality argument because plaintiff was under a duty to use "best efforts" to achieve goals of contract and, "[i]n any event, the substantial performance of the contract by the parties erased the defenses of lack of mutuality and consideration").

### c. As to the Alleged Lack of Consideration.

The Defendant argues that the contract lacks consideration, because the Plaintiff received the ten-year exclusivity period in exchange for nothing. In the Defendant's view, the Plaintiff was already under the preexisting obligation to import, distribute, market and promote the Defendant's wine, and nothing changed about its obligations after the parties agreed to a ten-year exclusivity period. Thus, the Defendant analogizes the November 2012 Letter to a promise to perform an existing legal obligation, which is not valid consideration to support a contract. *See Goncalves v. Regent International Hotels Limited*, 447 N.E.2d 693, 58 N.Y. 206 (1983).

The Defendant's argument ignores the Plaintiff's contention that it sought the ten-year period after the Defendant's alleged breach of the parties' prior exclusivity period, obtaining the guarantee in exchange for foregoing termination of the parties' arrangement. Forbearing the

exercise of a right possessed by a contracting party is adequate consideration. *See Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 201 (2d Cir. 2008) ("A contract that remains in force may still be terminated and renegotiated in exchange for, among other things, one party's forbearance of her legal right, such as a statutory right to terminate a previous grant of a copyright transfer or license."); *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991) ("[F]orbearance to assert a valid claim, if bargained for, is sufficient consideration to support a contract.").

### d. As to Whether the Parties' Agreement was Terminable at Will.

The Defendant argues that the relationship was terminable at will by either party at any time. Again, the Plaintiff disputes this assertion. It is contradicted by the November 2012 Letter, as well as Nocerino's testimony. The validity of the Defendant's argument is a question of fact, which must be decided by the jury, and is an improper basis for summary judgment. *See Landow-Luzier Co. v. Grey*, 232 N.Y.S.2d 247, 253 (Sup. Ct. 1962) ("[W]hether the contract . . . was terminable at will . . . [is a] question[] of fact which bar[s] a judgment on the basis of the pleadings alone."). Therefore, a genuine dispute of material fact remains regarding whether the parties entered into a binding contract.

### 2. As to the Statute of Frauds.

"[T]he Statute of Frauds forbids the imposition of a performance obligation on a defendant necessarily extending beyond one year, in the absence of a writing(s) which sets forth all of the essential terms of the agreement imposing that performance obligation." *City of Yonkers v. Otis Elevator Co.*, 649 F. Supp. 716, 727 (S.D.N.Y. 1986) (collecting cases). The writing "must be such that when it is produced in evidence it will inform the court or jury of the

essential facts set forth in the pleading, and which go to make a valid contract." *Dorman v. Cohen*, 413 N.Y.S.2d 377, 379, 66 A.D.2d 411, 414 (App. Div. 1979).

However, "what is an essential term for purposes of the Statute of Frauds is a flexible concept that depends upon whether that term seriously affects the rights and obligations of the parties, and whether there is a significant evidentiary dispute as to whether the parties agreed on that term." *Otis Elevator Co.*, 649 F. Supp. at 730; *see also Ginsberg Mach. Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir. 1965) ("The concept of 'essentiality' is relative. A term is 'essential,' and must thus appear in the 'memorandum,' if it seriously affects the rights and obligations of the parties and there is a significant evidentiary dispute as to its content."); *Dorman*, 413 N.Y.S.2d at 381, 66 A.D.2d at 414 (same).

The Defendant argues that the parties' oral agreement violates the Statute of Frauds because the November 2012 Letter is the only written memorandum of their contract. The November 2012 Letter only describes the time period of the exclusive distributorship agreement, and omits any mention of other terms such as: the procedure for determining the quantity of the wine; quality of the wine; the identification of specific wines; price; delivery and payment terms; the importing of the wine; the resale and distribution of the wine; the marketing and promotion of the wine; the parties' course of conduct; and their rights upon default or termination. According to the Defendant, the absence of these terms is fatal, because they are essential terms of the agreement.

The Court disagrees that the omission of those terms from the November 2012 Letter contravenes the Statute of Frauds. The November 2012 Letter is a writing signed by the Defendant which describes the only term considered essential in the context of this dispute—the ten-year exclusivity period. At this point, that term appears to be the only one subject to a

15

significant evidentiary dispute. The Defendant makes no argument that they never came to an agreement with the Plaintiff regarding the remaining terms. In fact, the Defendant concedes that the framework of the parties' agreement established that matters like price, quantity, and delivery would be handled on a yearly basis. *See* ECF 85-1 ¶ 8 ("There is no factual dispute that a business relationship did exist between Plaintiff and Castello Romitorio."); ECF 85-20 at 21 ("The parties engaged in a course of conduct to negotiate those terms at the end of each year, with delivery in January with each year being treated separately.").

Therefore, they are not "essential" as contemplated by the Statute of Frauds. *See I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*, 856 F. Supp. 168, 174 (S.D.N.Y. 1994) ("The March 27 Memorandum specified the starting date and term of the agreement, the rate at which commissions would be paid, the characters that I.R.V. could seek licenses for, and included a list of licensees that I.R.V. could not contact. . . . At this stage of the proceedings, the court cannot conclude as a matter of law that the remaining issues regarding accounting and payment constituted essential and material terms to this contract."); *Gittes v. Cook Int'l*, 598 F. Supp. 717, 721 (S.D.N.Y. 1984) (holding that the plaintiff's "duties under the agreement are not essential terms of a contract within the context of this lawsuit because the significant evidentiary issue is not whether plaintiff performed adequately but rather whether the parties were obligated to perform at all"); *Great Destinations, Inc. v. Transportes Aereos Portugueses S.A.R.L.*, 460 F. Supp. 1160, 1163–64 (S.D.N.Y. 1978) ("Omission of the price term here does not mean that the statute of frauds must apply, because the omission is not of an 'essential term' since it is not in dispute."); *Nat'l Trends, Inc. v. Krimson Corp.*, No. 91-cv-3178, 1994 WL 97058, at *21 (S.D.N.Y. Mar. 23, 1994) ("Brockum has failed to identify any dispute, let alone a 'significant

evidentiary dispute' regarding the parties' ability to agree on the purportedly vital terms Trends failed to include in the December 12 proposal.").

As the Court previously explained, the Statute of Frauds protects unwitting parties from certain transactions particularly susceptible to fraud. *Shaftel*, 39 F. Supp. 2d at 228–29. It is not designed to permit parties to escape agreements they knowingly entered into through gamesmanship and mere technicalities. By focusing exclusively on the other terms of the agreement, which it appears the Defendant fully agreed to, the Defendant "confuses the possibility of what might have been included in [the December 12 proposal] with what actually formed the essential terms" of the parties' understanding. *See Lande v. Radiology Specialists of Kingston P.C.*, 806 F.Supp. 1084, 1091 n. 11 (S.D.N.Y.1992). The Plaintiff need not "supply every item that the parties could have conceivably included" to comply with the Statute of Frauds. *Cleveland Wrecking Co. v. Hercules Const. Corp.*, 23 F. Supp. 2d 287, 300 (E.D.N.Y. 1998).

Moreover, "an integration of several documents satisfies the writing requirement of the statute where they refer to the same subject matter, together contain all the material terms, and at least one of which is signed or prepared by the party to be charged." *Royal Air Maroc v. Servair, Inc.*, 603 F. Supp. 836, 841 (S.D.N.Y. 1985) (citing *Crabtree v. Elizabeth Arden Sales Corp.*, 110 N.E.2d 551, 305 N.Y. 48 (1953)). To the extent that the November 2012 Letter omitted the terms desired by the Defendant, the Plaintiff furnished additional documents corroborating the parties' agreement to those terms. The Plaintiff put forward an e-mail submitting an order to the Defendant, as well as invoices drafted by the Defendant for those orders that specify the quantity, price, vintage, and delivery terms of the wine.

These additional writings, when viewed in conjunction with the November 2012 Letter, satisfy the Statute of Frauds. *See Ellig v. Molina*, 996 F. Supp. 2d 236, 244 (S.D.N.Y. 2014) ("[N]ere, neither party has contested the amount paid; the wires bear indicia of reliability, as do the invoices[.] . . . Under these circumstances, that the purchase price is contained in separate, not-classically signed documents is nonetheless sufficient."); *Am. Linen Supply Co. v. Penn Yan Marine Mfg. Corp.*, 569 N.Y.S.2d 267, 268, 172 A.D.2d 1007, 1008 (App. Div. 1991) ("The sizing slips, invoices, and defendant's check in payment of those invoices, as well as the testimony of the parties, corroborate defendant's assent to increasing the number of rental uniforms to be included in the contract between the parties. The writings satisfy the Statute of Frauds."); *Man-Hung Lee v. Hartsdale Canine Cemetery, Inc.*, 899 N.Y.S.2d 823, 830 (City Ct. 2010) ("In this case, the signed Certificate and the January 5, 2000 invoice contain all the material terms of an enforceable contract. Both the signed Certificate and invoice were delivered to plaintiff on the same day and refer to the same subject matter.").

Therefore, the Court finds that the Defendant has not established the Plaintiff's failure to comply with the Statute of Frauds as a matter of law.

**C** **AS TO THE PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.**

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quotation marks omitted). "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* at 81. "[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim

should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013); *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n. 17 (2d Cir. 2011).

Here, the Plaintiff's good faith and fair dealing claim merely reiterates its allegation that the Defendant failed to live up to its promise of exclusivity, so that the claim is duplicative of the Plaintiff's breach of contract claim. ECF 60 ¶¶ 35–36. Notably, the Plaintiff fails to even oppose the Defendant's motion for summary judgment as to this claim.

Therefore, the Court finds there is no genuine dispute of material fact as to the Plaintiff's allegation that the Defendant breached the covenant of good faith and fair dealing.

**D. AS TO THE PLAINTIFF'S *QUANTUM MERUIT* AND UNJUST ENRICHMENT CLAIMS.**

The Plaintiff's third and fourth causes of actions seek monetary compensation for the value and benefit that the Defendant received from the Plaintiff's work to promote the Defendant's wine in the United States under the theories of *quantum meruit* and unjust enrichment. The Defendant moves for summary judgment against these claims arguing, in essence, that the Plaintiff had no reasonable expectation to be compensated for those efforts and cannot recover under either theory. The Court disagrees.

"'Quantum meruit and unjust enrichment are not separate causes of action' and are therefore analyzed under the same principles." *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016) (Spatt, J.) (quoting *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)). In order to recover in *quantum meruit* under New York law, a claimant must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000). "The existence of

such an implied contract is a question of fact." *Paper Corp. of U.S. v. Schoeller Tech. Papers*, Inc., 773 F. Supp. 632, 641 (S.D.N.Y. 1991) (citing *L. Fatato, Inc. v. Miller Brewing Co.*, 582 F. Supp. 1377 (E.D.N.Y. 1984)).

Other courts have denied summary judgment against claims asserting *quantum meruit* and unjust enrichment in similar distribution arrangements.

In *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500 (E.D.N.Y. 2009), the plaintiff alleged that the defendant terminated their distributorship arrangement, denying the plaintiff the opportunity to sell the defendant's products to subdistributors at a profit. *Id.* at 501. Judge Irizarry denied the defendant's motion for summary judgment against the plaintiff's *quantum meruit* claim, because the plaintiff sought to recover "for the substantial time and effort it expended to build and promote good will toward defendant's products and to increase the sales of its products." *Id.* at 505. Thus, the plaintiff put forward specific steps it took to accomplish those goals, so that a genuine dispute of material fact existed surrounding its allegations.

In *L. Fatato, Inc. v. Miller Brewing Company*, 582 F. Supp. 1377 (E.D.N.Y. 1984), the plaintiff distributed the defendant's beer during a period of labor unrest, spending large sums to improve its equipment and warehousing capabilities and also sustaining property damage. After the strike ended, the defendant ceased the distribution arrangement, prompting the plaintiff to bring an action alleging that the defendant was unjustly enriched "in the maintenance of its reputation and public image regarding the quality and availability of its products and in its profits." *Id.* at 1378. The court found that whether these distribution services unjustly enriched the defendant, requiring restitution, to be "genuine issues for trial." *Id.* at 1379.

Similarly, in *Paper Corporation of the United States v. Schoeller Technical Papers, Inc.*, 773 F. Supp. 632 (S.D.N.Y. 1991), the plaintiff acted as sales agent for the defendant greeting

card paper manufacturer. The plaintiff developed substantial business with purchasers of such paper, from whom the plaintiff procured orders, purchased orders on their behalf from the defendant, and then resold to the purchasers. The plaintiff derived no compensation from the defendant during the course of this business relationship; rather, the plaintiff's profit consisted of the differential between the price it paid the defendant for the defendant's paper and the price it charged the purchaser for that paper. *Id.* at 634. The court found these facts sufficient to defeat a motion for summary judgment, because the plaintiff set forth evidence that it developed a relationship with purchasers; the defendant accepted that performance; it received a markup on the sale of the defendant's products; and it had a reasonable expectation of compensation, as well as the reasonable value of such compensation. *Id.* at 641.

Similar to these cases, the Plaintiff alleges that it devoted significant time and resources towards promoting the Defendant's wine in the United States, to the benefit of the Defendant. It did so pursuant to the expectation that it would be compensated through the profits it recovered for the sale of the Defendant's wine during the exclusivity period. By terminating the parties' exclusive arrangement, the Defendant recouped the benefits of the Plaintiff's efforts without compensating them for those services. Whether the Plaintiff benefited the Defendant; whether the Plaintiff reasonably expected compensation for those services; and the reasonable value of those services are issues for the jury to decide.

Therefore, the Court finds that the Defendant failed to establish the absence of a genuine issue of material fact as to the Plaintiff's *quantum meruit* and unjust enrichment claims.

### E.  AS TO THE PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM.

The Plaintiff's fifth cause of action seeks to recover all moneys spent in reliance on the Defendant's promise to provide a exclusive distribution arrangement plus all lost profits. The

Court finds a genuine dispute of fact as to this claim, except the Plaintiff may not recover lost profits as a matter of law.

To establish a claim for promissory estoppel, a plaintiff must show: "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise." *Air Italy S.p.A. v. Aviation Technologies, Inc.*, No. 10-cv-20, 2010 WL 2925949, at *5 (E.D.N.Y. July 21, 2010).

The Defendant argues that the Plaintiff cannot establish a promissory estoppel claim because (1) there is no evidence of a clear and unambiguous promise and (2) the Plaintiff did not rely on any such promise to its detriment. The Court disagrees with the first argument and partially agrees with the second argument.

First, the clarity and unambiguousness of the Defendant's promise to the Plaintiff is disputed. The Defendant argues that Plaintiff's claim fails because it did not obtain a "clear and detailed written document" or otherwise detail the remaining terms of the distribution agreement with the Defendant. The Defendant's argument is misguided. The promissory estoppel inquiry focuses on the definiteness of the alleged promise itself, not the overall agreement. The language in the November 2012 Letter and Nocerino's recounting of his conversation with Chia articulate an unequivocal promise that the Defendant would not use distributors other than the Plaintiff to import its wine for a certain period of time. If the Defendant in fact made such a representation, then this element is easily satisfied.

In reality, the Defendant's argument amounts to a disagreement about what occurred during the meeting and what the November 2012 Letter is supposed to represent. The merits of the parties' disagreement is an issue of fact, which must be decided by the jury. *See Andrew R. Mancini Assocs., Inc. v. Murphy Excavating Corp.*, 100 N.Y.S.3d 748, 750, 172 A.D.3d 1664,

1665 (App. Div. 2019) (affirming denial of motion for summary judgment against promissory estoppel claim because "questions of fact existed as to what transpired during the contract negotiations"); *Bunkoff Gen. Contractors, Inc. v. Dunham Elec., Inc.*, 753 N.Y.S.2d 156, 158, 300 A.D.2d 976, 978 (App. Div. 2002) ("Upon our review of the documentary and testimonial evidence in the record, we find that questions of fact exist concerning whether defendant indeed made a clear and unambiguous promise to plaintiff when it submitted its quote and amended quote and also whether plaintiff reasonably relied upon defendant in submitting its own bid to the project owner.").

Second, the Plaintiff alleges that it incurred significant expenses in promoting the Defendant's brand and selling its wine in reliance on the Defendant's promise of exclusivity. ECF 89-1 ¶ 27. To the extent that the Defendant disagrees with this characterization, the fact of the Plaintiff's reliance is a matter reserved for the jury. However, the Court agrees with the Defendant regarding the Plaintiff's claim for lost profits. The Plaintiff may not recover expectation damages under the theory of promissory estoppel. *See Clifford R. Gray, Inc. v. LaChase Construction Services, LLC*, 857 N.Y.S.2d 347, 51 A.D.3d 1169 (App. Div. 2008).

Therefore, the Court finds that the Defendant failed to establish the absence of a genuine issue of material fact as to the Plaintiff's promissory estoppel claim, except for the Plaintiff's attempt to recover lost profits, which fails as a matter of law.

**F. AS TO THE DEFENDANT'S TORTIOUS INTERFERENCE COUNTERCLAIMS.**

The Defendant asserts a counterclaim for tortious interference with business relationship and a counterclaim for tortious interference with contract based upon the Plaintiff assertion of its alleged exclusive distributor status to Mionetta, a third-party who the Defendant sought to import its wine through after it terminated its arrangement with the Plaintiff. The Court finds that the

Defendant has not produced evidence sufficient to entitle it to summary judgment in its favor on either claim.

"The elements of tortious interference with a business relationship are '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 195 (S.D.N.Y. 2011) (citation omitted). Similarly, a claim for tortious interference with contract "requires proof of (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." *Foster v. Churchill*, 665 N.E.2d 153, 87 N.Y.2d 744, 749–50 (1996).

Both causes of actions require some form of improper motive, and do not permit tortious interference claims where the alleged tortfeasor acted solely out of legitimate economic self-interest. *See RFP LLC*, 788 F. Supp. 2d at 196 (explaining that if a party's actions were motivated at all by its own competing interests, rather than for the sole purpose of inflicting harm, a tortious interference with business relations claim must be dismissed); *Law Offices of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 15 N.Y.S.3d 814, 131 A.D.3d 583, 586 (App. Div. 2015) (noting that "where the offending party's actions are motivated by economic self-interest, they cannot be characterized as solely malicious" and a claim for tortious interference with business relations cannot be established); *Foster*, 87 N.Y.2d at 750, 665 N.E.2d 153 ("economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality").

Here, the Plaintiff alleges that it contacted Mionetto for the sole purpose of vindicating its exclusivity rights under its agreement with the Defendant. The Defendant has furnished no

evidence of malice or illegality. The Defendant's argument is merely that the Plaintiff knew of its relationship with Mionetto and intentionally sought to terminate it, *ergo*, the Plaintiff must have committed tortious interference. The Defendant's conclusory assertion is not enough to establish the absence of a genuine issue of material fact.

Therefore, the Court denies the Defendant's motion for summary judgment in favor of its tortious interference counterclaims.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's motion for summary judgment, in part, and denies the Defendant's summary judgment motion, in part. The Court dismisses the Plaintiff's claim for breach of the covenant of good faith and fair dealing and the Plaintiff's demand for lost profits under the theory of promissory estoppel. The Court denies the Defendant's motion in all other respects.


It is **SO ORDERED**:
Dated: Central Islip, New York
      March 12, 2020

                                     /s/ Arthur D. Spatt
                                  ARTHUR D. SPATT
                        United States District Judge